IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL NO. 04-365-01 (RCL) |
| | : | |
| KHALID MAHMOOD, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR
SENTENCE REDUCTIONS PURSUANT TO U.S.S.G. § 3E1.1(b) and § 5K1.1**

The defendant Khalid Mahmood ("Mahmood") is scheduled to be sentenced on January 19, 2006, upon his plea of guilty to a one-count criminal Information charging him with engaging in a conspiracy to violate the United States embargo on exports to Iran, in violation of 18 U.S.C. §371. The statutory maximum sentence of imprisonment is five years. Both parties have agreed to the United States Sentencing Guidelines calculations utilized in the Presentence Report ("PSR") which correctly calculate the defendant's Total Offense Level to be 23 (after a two-level reduction for Acceptance of Responsibility and an additional one-level reduction for which the government is hereby moving pursuant to U.S.S.G. §3E1.1(b)), and the resulting sentencing range to be 46-57 months of imprisonment. The defendant was incarcerated continuously for more than sixteen (16) months, from the time of his arrest on August 7, 2004, until his release (on conditions) pending sentencing, on approximately December 16, 2005.

The purpose of this filing is (1) to urge the Court to apply, as advisory, the Guidelines calculation on which the parties and the Probation Office have agreed, and (2) to request that the Court grant a third-level reduction for Acceptance of Responsibility pursuant to U.S.S.G.

§3E1.1(b) and an appropriate downward departure from the Sentencing Guidelines range, pursuant to U.S.S.G. §5K1.1, in consideration for the defendant's substantial assistance to the government in the investigation and prosecution of others for their parts in violating the United States Iranian export ban. Specifically, the government recommends a reduction of nine levels below the Total Offense Level computed by the Probation Office, resulting in a level of 14 and a sentencing range of 15-21 months in prison, and requests that the Court impose a sentence within that range.

### The Court should Apply the Guidelines Calculation, as Recommended by *Booker*

The Court can and should apply the stipulated Sentencing Guidelines calculation, even though it is no longer mandatory to do so, and accordingly should impose a sentence within the applicable Guidelines range of 15-21 months of imprisonment.

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004), and consequently invalidated the statutory provision that made the Guidelines mandatory: 18 U.S.C. §3553(b)(1). Booker, 125 S. Ct. at 756. However, the Court expressly decline to invalidate the Guidelines in their entirety, and instead declared the remainder of the Guidelines to be the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written

order of judgment and commitment the specific reason for imposing a sentence different from that provided for in the Guidelines.  See 18 U.S.C. §3554(c)(2).  Such a sentence will then be subject to appellate review for its "reasonableness."  Booker, 125 S. Ct. at 765.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines.  See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing).  "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  Booker, 125 S. Ct. at 767 (citing 18 U.S.C.A. §§3553(a)(4)&(5) (Supp. 2004)).  In light of this mandate – as well as the continued requirement that the sentencing court explain in writing the basis for a sentence that falls outside of the Guidelines range, and the new "reasonableness" standard of review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se.  Not only is a sentence within the Guideline range presumptively reasonable, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines – intended to achieve the uniform and appropriate treatment of like crimes – represent the distillation of two decades of careful study of sentencing practices across the country, and closely correlate to the varying severities of crimes as defined by Congress.  The Guidelines, consisting of offense characteristics and various grounds for departure, address the relevant sentencing considerations set forth in §3553(a).  These considerations include, among others: "the nature and circumstances of the offense and the history and characteristics of the

defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  See United States v. Coles, 403 F.3d 764, 766 (D.C. Cir. 2005).

Indeed, the Sentencing Commission formulated the Guidelines only after first canvassing prior sentencing practice and undertaking to identify and assign weights to all the factors – aggravating and mitigating – that judges had long traditionally used in determining an appropriate sentence.  See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. §994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  Moreover, in the nearly two decades since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns."  Booker, 125 S. Ct. 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the sentencing court. This view is shared by Congress and the Supreme Court. As every Supreme Court Justice in the various opinions in Booker recognized, the Guidelines embody the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("[T]he primary objective of the Act was to reduce sentencing disparity.").

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness". See Booker, 125 S. Ct. at 765. Nevertheless, the Guidelines – resulting as they do from years of study of sentencing practices, crime statistics, and national crime policy, and of careful consideration of the factors that inform sentencing, see 18 U.S.C. §3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker does not allow courts to substitute their individual judgment about the

appropriateness of the Guidelines range without justifying why their sentence takes the case outside of the heartland of situations already contemplated by the Guidelines.  See 18 U.S.C. §§3553(c) (mandating consideration of the Guidelines) and 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range).

      Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances.  This is so, said the court in United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress.  The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference.  Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, a court should "give heavy weight to the recommended Guidelines sentence in determining what sentence is appropriate" and, "[i]n the exercise of its discretion . . . only deviate from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. 925.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, all the facts supporting the proposed sentence have been admitted to by the defendant – and, indeed, in every respect the Guidelines calculation has been stipulated to by him. Moreover, as explained below and made clear in the PSR, no unusual circumstances exist that would warrant an exception to the preference for Guideline sentencing.  Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range at level 22 – resulting from a three-level §5K1.1 reduction, as recommended by the government, from the level calculated in the PSR.

**The Guidelines Calculation Correctly Reflect the Seriousness of the Defendant's Offense**

The agreed-upon Guidelines calculation in this case properly takes into consideration the seriousness of the criminal conduct to which the defendant has pled guilty.  He engaged in ongoing efforts to procure industrial moving equipment components from United States companies – including the Indiana-based radiator manufacturer in connection with which he has been charged[1] – for and on behalf of Sepahan Lifter, an Iranian company engaged in assembling and brokering forklift trucks and tow tractors for customers within Iran, and he contributed materially to Sepahan Lifter's ability to satisfy its Iranian customers' needs for heavy industrial moving equipment.

The offense underlying the conspiracy charge to which the defendant has admitted guilt is a violation of the United States export control laws restricting exports to Iran, in particular

---

[1] The president of this company, Indiana Heat Transfer, alerted the government to the defendant's efforts, and cooperated in an undercover operation that led to the defendant's arrest; that official and his company bear no criminal liability.

50 U.S.C. §§1701-1706 (the International Emergency Economic Power Act, or "IEEPA") and 31 C.F.R. Part 560 (the Iranian Transactions Regulations, or "ITR"). That substantive offense has a potential penalty of up to ten (10) years imprisonment; however, the conspiracy charge has a maximum penalty of no more than five (5) years in prison.

Under the Guidelines, the conspiracy charge is calculated according to the underlying charge. The base offense level applicable to the substantive violation in this case is 26, because the offense involved a financial transaction with Iran – a country that has been determined to support international terrorism. U.S.S.G. §2M5.1(a)(2). Although the components at issue in this case are not apparently directly related to Iranian weapons or nuclear proliferation, they certainly are generally essential to heavy industry and infrastructure maintenance. Thus, in the government's view, the high sentencing Guideline mandated where illegal exports are destined for Iran is clearly within the ambit of this case. There are no applicable guidelines enhancements.

The defendant's early admission of his culpability, and agreement to enter a guilty plea and cooperate with the government, clearly entitle him to the full 3-level reduction available under such circumstances. Moreover, as explained below, the government has concluded that the defendant's assistance has been sufficiently substantial to warrant a further 9-level reduction pursuant to U.S.S.G. §5K1.1, resulting in a level 14 and a range of 15-21 months. The government submits that this range reflects an appropriate balance between the seriousness of the defendant's offense and his timely acknowledgment and substantial cooperation.

### The Defendant is Entitled to a Sentence Reduction for Substantial Assistance

Section §5K1.1 of the Sentencing Guidelines provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or

prosecution of another person who has committed an offense, the court may depart from the guidelines." Relevant factors that the court may consider in determining the appropriate reduction include (but are not limited to): the court's evaluation of the significance and usefulness of the defendant's assistance (based in part upon the government's evaluation); the truthfulness, completeness, and reliability of information or testimony provided by the defendant; and the nature, extent, and timeliness of the defendant's assistance.

In this case, the defendant entered into the plea agreement with the government after initial debriefings in which he candidly and extensively disclosed the nature and breadth of the criminal scheme in which he was a principal player. He has continued to participate in detailed debriefings, and has provided specific information about (among other things) the roles and actions of other participants in the scheme. As a direct result of the defendants cooperation, in December 2004 the government obtained and executed search warrants on the Lexington, Kentucky, headquarters of Clark Material Handling Company ("CMHC") – a forklift truck manufacturer and dealer whose products were transhipped through the defendant's Dubai-based company to the Iranian company Sepahan Lifter Company, in violation of the Iran embargo. Based upon documents and information provided by the defendant, and materials seized from CMHC, the government obtained an indictment against two CMHC employees who had been directly and knowingly engaged in that illegal export scheme: Robert E. Quinn and Michael H. Holland. The defendant testified at length at the Quinn/Holland trial, <u>United States v. Quinn and Holland</u>, Criminal No. 05-018 (JDB), and withstood aggressive cross-examination. In large part due to the defendant's cooperation, Quinn was found guilty of conspiracy to violate the Iran trade embargo, and of five related substantive violations.

In addition, after the court in <u>United States v. Quinn and Holland</u> issued a ruling deeming invalid the legal theory underpinning the Quinn/Holland IEEPA conspiracy indictment – which was the identical theory upon which Khalid Mahmood had been indicted – this defendant declined to take the opportunity to contest his prosecution and instead agreed to waive indictment and re-enter his guilty plea to a criminal Information alleging re-formulated conspiracy charge brought under the federal omnibus conspiracy statute, 18 U.S.C. §371.  It is on this charge that he is being sentenced.

In sum, this defendant's timely and thorough cooperation has materially assisted the government in furthering its investigation and prosecution of other participants in an illegal scheme, and the government has concluded that the assistance has been so substantial and significant as to warrant consideration in the form of a nine-level reduction in his Guidelines sentence range.

## Conclusion

For all the foregoing reasons, the United States respectfully requests that the Court: (1) accept as advisory the Probation Office's calculation of the Sentencing Guidelines applicable to the defendant, (2) grant the government's motion for a third-level reduction pursuant to U.S.S.G. §3E1.1(b), (3) award the defendant a nine-level downward departure based upon the

substantial assistance he has furnished to the government – resulting in a final Guidelines level of 14 – and (4) impose a sentence within the Level 14 range of 15-21 months.[2]

                    Respectfully submitted,

                    KENNETH L. WAINSTEIN
                    United States Attorney
                    D.C. Bar Number 451058

By:
                    LAURA A. INGERSOLL
                      Assistant United States Attorney
                      Connecticut Bar No. 306759
                      202/514-9549
                      laura.ingersoll@usdoj.gov

                  JAY I. BRATT
                      Assistant United States Attorney
                      D.C. Bar No. 6187361
                      202/353-3602
                      jay.bratt@usdoj.gov

National Security Section
555 4th Street, N.W. – 11th Floor
Washington, D.C.  20530

## Certification

     I hereby certify that a copy of the foregoing was served by electronic means upon counsel for the defendant, this 17th day of January, 2006.

                    _____
                    Assistant United States Attorney

---

[2] As to other features of the sentence – such as restitution and supervised release – the government concurs with the provisions of the plea agreement and the PSR, as to all of which the defendant has stipulated.